UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLANCA SANCHEZ and FIDEL VASQUEZ SANCHEZ,<br><br>Plaintiffs,<br><br>v.<br><br>DURANGO FARM MANAGEMENT INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:20-cv-01435-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>(Docs. 31, 38)<br><br>**FOURTEEN (14) DAY DEADLINE** |

On November 1, 2021, Plaintiffs Blanca Sanchez and Fidel Sanchez ("Plaintiffs"), filed a motion for default judgment against Defendant Durango Farm Management, Inc., ("Defendant"). (Doc. 31) The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and vacated the hearing set for November 23, 2021. (Doc. 36.)  On December 10, 2021, the Court ordered Plaintiffs to file supplemental briefs to clarify Plaintiffs' request for judgment.[1] (Doc. 37.) On January 5, 2022, Plaintiffs filed an amended motion for default

---

[1] Plaintiffs were asked to provide supplemental briefing that addressed (1) whether Plaintiffs sought damages for the alleged violations of the Agricultural Worker Protection Act, (2) whether Plaintiffs were seeking damages for both named Plaintiffs, and (3) the necessary legal standards for granting a motion for default judgment. (Doc. 37.) In Plaintiffs' original motion they failed to thoroughly address these topics and it was unclear to the Court what Plaintiffs were requesting.

judgment. (Doc. 38.) Defendant has not appeared in this action or otherwise filed a timely opposition to the motion.

Having considered the moving papers and the Court's file, the Court RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED and that judgment be entered against Defendant Durango Farm Management, Inc.

## I. FACTUAL BACKGROUND

This is an action for lost wages stemming from Plaintiffs Blanca Sanchez and Fidel Vasquez Sanchez employment with Defendant Durango Farm Management filed on October 8, 2020. (Doc. 1.) Plaintiffs were seasonal agricultural workers who have worked for Defendant both directly and through various Farm Labor Contractors. (Doc. 21 at 3.) Defendant is a nationwide produce company specializing in growing fruit commodities such as blueberries. (*Id.*) Plaintiffs brought the complaint for unpaid wages first on behalf of themselves and others similarly situated. (Doc. 1.) Plaintiffs then amended the complaint on December 14, 2020, adding an additional claim. (Doc. 6) Finally, Plaintiffs amended the complaint a second time on May 17, 2021, removing all class claims and leaving only individual claims against Defendant. (Doc. 21.) Plaintiffs are alleging Defendant failed to provide paid rest breaks, record and pay for travel time, record and pay for pre- and post-shift work, to reimburse expenses, and pay all wages due upon separation. (*Id.* at 3.)

Defendant was served with copies of the summons and complaint but failed to appear or otherwise respond. (*See* Doc. 35.) On June 11, 2021, Plaintiffs filed a request for entry of default. (Doc. 23.) The Clerk of Court entered default against Defendant on June 11, 2021 (Docs. 24, 25.) On November 1, 2021, Plaintiffs filed the instant motion for default judgment. (Doc. 31.) On December 10, 2021, the Court ordered Plaintiffs to file supplemental briefs to clarify Plaintiffs' request for judgment. (Doc. 37.) On January 5, 2022, Plaintiffs filed an amended motion for default judgment. (Doc. 38.) By the motion, Plaintiffs' request default judgment in the amount of $10,352.92 against Defendant. Plaintiffs do not seek judgment on behalf of Plaintiff Fidel

Vasquez Sanchez,[2] nor do Plaintiffs seek judgment as to the first claim in the operative complaint. (Doc. 38 at 3.)

## II. DISCUSSION

### A. Service of Process

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested. *See, e.g., Farmers Automobile Insurance Ass'n v. Long,* 2014 WL 12773793 at *1 (E.D. Cal. Mar. 13, 2014); *Coach, Inc. v. Diva Shoes & Accessories*, 2011 WL 1483436 at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, 2010 WL 5200912 at *2 (E.D. Cal. Dec. 15, 2010).

Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. An individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>   (A) delivering a copy of the summons and of the complaint to the individual personally;
>
>   (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
>   (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

California law, in turn, permits substituted service upon an individual by:

> "leaving a copy of the summons and complaint . . . at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail."

Cal. Code Civ. P. § 415.20(a).

---

[2] All references to a single Plaintiff in the remainder of this order refer to Plaintiff Blanca Sanchez ("Plaintiff Sanchez").

3

According to the proof of service on file, Defendant was served with the second amended complaint by substitute service by leaving copies with a Chris "Doe," a supervisor authorized to accept service. (Doc. 22 at 1.)  Additionally, Defendant was mailed a copy of the summons and process to its mailing address at 2491 Alluvial Ave #16, Clovis, CA, 93611. (Doc. 22 at 3.) Accordingly, the Court finds that Plaintiffs properly served the Defendant pursuant to Federal Rule of Civil Procedure 4(e)(1) and (2)(A)-(B).

## B. The *Eitel* Factors Weigh in Favor of Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2).  "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).  As discussed below, the Court finds that these *Eitel* factors weigh in favor of granting default judgment.

### 1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.,* 238 F.Supp.2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id.; Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Here, the Court finds Plaintiffs would be prejudiced if default judgment is not granted and this

4

factor weighs in favor of default judgment.

                2. <u>Merits of Plaintiffs' Claims and Sufficiency of the Complaint</u>

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007).

                *a. Second Claim: Wage Order 14-2002 and Cal. Lab. Code §§ 510, 1194, 1194.2, and 1199 for unpaid wages and overtime:*

California Labor Code § 510 defines a "day's work" and establishes that work in excess of eight hours in one day, 40 hours in one week, and the first eight hours on the seventh day of work shall be compensated at "no less than one and one-half times the regular rate of pay for the employee." Similarly, the Industrial Welfare Commission ("IWC") Wage Order 14-2001 establishes overtime provisions for persons in the agricultural occupations as:

> "The following overtime provisions are applicable to employees eighteen (18) years of age or over and to employees sixteen (16) or seventeen (17) years of age who are not required by law to attend school: such employees shall not be employed more than ten (10) hours in any one workday or more than six (6) days in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over ten (10) hours in any workday and for the first eight (8) hours on the seventh (7th) day of work and double the employee's regular rate of pay for all hours worked over eight (8) on the seventh (7th) day of work in the workweek."

Wage Order 14-2001(3)(A). California Labor Code § 1194 provides an employee may recover wages, interest, attorney fees, and costs in a civil action, where the employee received less than the minimum wage or the legal overtime compensation applicable to the employee. Finally, California Labor Code § 1199 provides that a person who pays an employee a wage less than the legal minimum wage is guilty of a misdemeanor that is punishable by a fine of not less than $100.

In Plaintiffs' Second Amended Complaint, Plaintiff Sanchez pleads that Defendant failed to pay her for each and every hour worked. Specifically, Plaintiff Sanchez pleads she was required to arrive at work 30-40 minutes prior to her scheduled time to "sign in and put [her] name on a card," was required to attend safety classes 1-2 times per week each lasting 15-20

minutes, was routinely required to wait 1-3 hours for the trees to dry before being able to pick, was required to travel between fields using her own vehicle, and was required to routinely wait 15-20 minutes for her card to be punched after picking but before she was free to go home. (Doc. 21 ¶¶ 54-62.) Plaintiff Sanchez alleges she was not compensated for these times in which her attendance at work was required.

Based on the allegations in Plaintiffs' second amended complaint, Defendant failed to properly compensate Plaintiff Sanchez for all hours including overtime. Plaintiff Sanchez has properly alleged a claim under Wage Order 14-2002 and Cal. Lab. Code §§ 510, 1194, 1194.2, and 1199.

        *b. Third Claim: California Labor Code § 1194, Minimum wages*

California Labor Code § 1194(a) also provides that an employee may raise a claim where she received less than the legal minimum wage. Plaintiff Sanchez alleges that when she would not pick enough crops to earn minimum wage, Defendant failed to compensate her for what was considered "unproductive work." (Doc. 21, ¶¶ 65-66.) Plaintiff Sanchez has properly alleged a claim under California Labor Code § 1194.

        *c. Fourth Claim: Failure to Provide Rest Breaks under Wage Order 14-2002(12)*
              *and California Labor Code § 226.7*

The IWC Wage Order provides:
> "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages."

Wage Order 14-2001(12). Further, California Labor Code § 226.7(c) provides that for each workday in which an employee is not given a meal or rest period the employer shall pay the employee one additional hour of pay at the employee's regular rate.

Here, Plaintiff Sanchez alleges that she regularly worked more than 3.5 hours without being provided a paid rest period while working at a piece rate basis. (Doc. 21, ¶ 69.) Plaintiff

Sanchez has properly alleged a claim under Wage Order 14-2002(12) and California Labor Code § 226.

        d. *Fifth Claim: Failure to Reimburse Business Expenses Pursuant to California Labor Code § 2802:*

California Labor Code § 2802(a) holds that an employer shall indemnify an employee for all "necessary expenditures or losses" incurred by the employee as a consequence of following the employer's directions or in completing the employee's duty. Plaintiff Sanchez alleges that she incurred necessary expenses including providing necessary tools and equipment that Defendant did not provide and transportation costs. (Doc. 21, ¶ 71.) Specifically, Plaintiff Sanchez was required to transport herself from field to field during the workday in her own vehicle. (Doc. 21, ¶ 74.) Plaintiff Sanchez was also required to provide her own tools including knee pads and belts used to hold picking buckets. (Doc. 21, ¶ 74.) Plaintiff Sanchez alleges she was not reimbursed for any vehicle or tool expenses. (Doc. 21, ¶ 75.) Plaintiff Sanchez has properly alleged a claim under California Labor Code § 2802.

        e. *Sixth Claim: Waiting Time Penalties Under California Labor Code § 203:*

California Labor Code § 203 establishes that an employer who fails to pay any wages of an employee, who has quit or been discharged, shall pay a penalty from the due date of the wages for not more than 30 days at the same rate of pay. Plaintiff Sanchez alleges that she worked as a seasonal worker and Defendant failed to pay wages owed to Plaintiff Sanchez after each season when Plaintiff Sanchez was discharged. (Doc. 21, ¶¶ 79-82.) Plaintiff Sanchez has properly alleged a claim under California Labor Code § 203.

        f. *Seventh Claim: Violation of California Business & Professions Code § 17200, et seq.:*

California Business & Professions Code § 17200, et seq., provides injunctive relief against businesses that engage in unfair trade practices. Plaintiff alleges that Defendant has engaged in numerous unfair trade practices which would be subject to injunctive relief. "To state a claim under California Business and Professions Code § 17200, a plaintiff must allege that the defendant engaged in an 'unlawful, unfair, or fraudulent business act.'" Cal. Bus. & Prof. Code §

17200; *Khraibut v. Chalal,* 2021 WL 1164940 at *26 (Cal. N.D. Mar. 26, 2021) (citing *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002)). A plaintiff must plead an underlying state, federal, or local violation for an action to be unlawful under § 17200. *Khraibut,* 2021 WL 1164940 at *26 (citing *Friedman v. AARP, Inc*., 855 F.3d 1047, 1052 (9th Cir. 2017)).

In the Second Amended Complaint, and as discussed above, Plaintiff Sanchez has alleged that Defendant failed to pay minimum wage (Cal. Lab. Code § 1194), overtime (Cal. Lab. Code § 1194); failed to provide rest breaks (Cal. Lab. Code § 226.7); failed to reimburse business expenses (Cal. Lab. Code § 2802); failed to pay waiting time penalties (Cal. Lab. Code § 203); and violated the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200). Thus, Plaintiff Sanchez has stated a § 17200 claim.

For the reasons set forth above, the Court finds that the second and third *Eitel* factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.,* 238 F Supp.2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiff Sanchez seeks judgment in the amount of $10,352.92. (Doc. 31 at 3.)

Plaintiff Sanchez calculated the amount based on five steps. First, Plaintiff Sanchez calculates that she was owed approximately $1,116.48 for missed rest breaks.[3] Second, Plaintiff Sanchez calculated that she was owed approximately $558.24 for pre shift work, including waiting for blueberry trees to dry.[4] Third, Plaintiff Sanchez calculated that she was owed $232.60

---

[3] Plaintiff Sanchez estimates six (6) missed breaks a week, over four (4) weeks per season for four (4) seasons worked. Plaintiffs based the per hour rate of $11.63, on an average of Plaintiff's rate of pay over five seasons. ($11.63 x 6 (missed breaks a week) x 4 (weeks per season) x 4 (seasons worked) = $1,116.48. (Doc. No. 31-1 at 2.)

[4] Plaintiff Sanchez estimates that she would conduct about 3 hours of pre shift work per week at the average rate of $11.63. ($11.63 x 3 (hours per week worked pre shift) x 4 (weeks per season x 4 (seasons worked) = $558.24. (Doc. No. 31-1 at 3.)

for post shift work.[5] Fourth, Plaintiff Sanchez calculated that she was owed approximately $72 in reimbursement for tools for four seasons of work.[6] Finally, Plaintiff Sanchez calculated that she was owed approximately $8,373.60 in waiting time penalties.[7] The total amount Plaintiff Sanchez has calculated is $10,352.92. The amount sought by Plaintiff Sanchez appears to be minimal in light of the alleged violations. Accordingly, this factor does not weigh against entry of default judgment.

####    4.   The Possibility of a Dispute Concerning Material Facts

The facts of this case as they pertain to the Defendant is straightforward, and Plaintiffs have provided the Court with a complaint that contains well-pled allegations and declarations and exhibits in support. Following the clerk's entry of default, the Court may assume the truth of well-pled facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists as to the facts that relate to the Defendant. Further, the Defendant's failure to file an answer in this case or a response to the instant motion supports the conclusion that the possibility of a dispute as to material facts is minimal. *See, e.g., Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

####    5.   Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.

---

[5] Plaintiff Sanchez estimates that she would conduct about 12.5 minutes of post shift work at the average rate of $11.63. (12.5 mins/60 x $11.63 x 6 (days worked per week) x 4 (weeks per season) x 4 (seasons worked) = $232.60. (Doc. No. 31-1 at 3.)

[6] Plaintiff Sanchez estimates that she spent approximately $18 per season on necessary tools to perform her jobs. ($18 x 4 (seasons worked) = $72). (Doc. No. 31-1 at 3.)

[7] Plaintiff Sanchez estimates that she is owed $2,791.20 per season in penalties. ($11.63 x 8 (hours per day) x 30 (days of wages) x 3 (seasons) = $8,373.60). (Doc. No. 31-1 at 3.)

*Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Defendant was properly served with the original complaint and then the operative second amended complaint. (Doc. 22.) Plaintiffs mailed a copy of the original motion to Defendant's mailing address. (Doc. 31 at 5.) Additionally, Plaintiffs provided Defendant with notice that the hearing date and time was changed. (Doc. 34.) Plaintiffs also served Defendant with a copy of the amended motion for default judgment filed on January 5, 2022. (Doc. 38 at 13.) Despite ample notice of this lawsuit and Plaintiffs' intention to seek default judgment, Defendant has not appeared to date. Thus, the record suggests that Defendant has chosen not to participate in this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.,* 238 F.Supp.2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.,* 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendant has not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

### C. Damages

#### 1. Attorneys' Fees and Costs

Plaintiffs also seek an award of attorneys' fees and costs. Attorney fee awards are calculated using the lodestar method, which multiplies the numbers of hours reasonably spent on the matter with a reasonable hourly rate. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018). The district court has the discretion to make adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but concise reason for the fee award. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

10

Plaintiffs seek a total amount of $99,398.50[8] in attorneys' fees and $5,851.06[9] in costs. (Doc. 38-1, Katzenstein Ly Decl. ¶¶ 12-14.) Specifically, Plaintiffs claim their counsel and others spent 88.6 hours on this case (Doc. 38-1, Exh. 1 to Katzenstein Ly Decl.) Plaintiffs also claim $4,481.65 in costs. (Doc. 38-1, Exh. 2 to Katzenstein Ly Decl.) Finally, Plaintiffs claim their co-counsel, attorneys at the firm Martinez Aguilasocho & Lynch, APLC, spent 223 hours on this case. (Doc. 38-1, Exh. 3 to Katzenstein Ly Decl.)

However, Plaintiffs do not provide information to determine the reasonableness of the fees and costs requested. While Plaintiffs provided a time sheet for both her lead counsel's firm and co-counsel's firm, Plaintiffs failed to identify an hourly rate that was used by either firm. Further, the time sheet for Counsel Katzenstein Ly's firm provides tasks performed by persons other than Ms. Katzenstein Ly, but does not indicate if they are attorneys or paralegals and what their hourly rates are. Similarly, the time sheet for the firm Martinez Aguilasocho & Lynch, APLC, fails to even provide full names of those working on this matter, and instead provides only initials. Based on the information provided, the Court is unable to determine whether the request fees and costs are reasonable in this case.

Counsel is admonished that this matter has already consumed undue judicial resources for counsel's failure to provide necessary information for the Court to rule on the entirety of this motion. The Court has already required the Plaintiffs to file supplemental briefings for failing to address the legal standards of granting a motion for default judgment in their original motion. Allowing Plaintiffs to file additional briefing at this time, where they have failed to carry their burden, would further consume undue judicial resources. As such, the Court recommends that Plaintiffs' request for fees and costs be DENIED without prejudice.

///

///

///

---

[8] Plaintiff's counsel seeks $42,351.00 in fees and Plaintiff's co-counsel Martinez Aguilasocho & Lynch, APLC seeks $57,047.50 in fees.

[9] Plaintiffs' counsel seeks $4,481.65 in costs and Plaintiffs' co-counsel Martinez Aguilasocho & Lynch, APLC seeks $1,369.41 in costs.

## V. CONCLUSION AND RECOMMENDATION

Accordingly, based on foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' amended motion for default judgment (Doc. 38) be GRANTED;
2. Default judgment be entered in favor of Plaintiff Blanca Sanchez and against Defendant Durango Farm Management, Inc., in the amount of $10,352.92;
3. Plaintiffs' request for attorney fees and costs be DENIED without prejudice; and
4. All claims brought by Plaintiff Fidel Vasquez Sanchez be DISMISSED with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 12, 2022**                    /s/ Barbara A. McAuliffe
                                               UNITED STATES MAGISTRATE JUDGE